

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 20, 2016

**STATE OF TENNESSEE v. JEFFREY STANLEY MITCHELL**

**Appeal from the Criminal Court for Knox County**
**Nos. 103163, 103177      Scott Green, Judge**

**No. E2016-00601-CCA-R3-CD**

The defendant, Jeffrey Stanley Mitchell, appeals his Knox County Criminal Court jury convictions of one count of facilitation of the possession with intent to sell more than 26 grams of cocaine within a drug-free school zone, one count of third offense simple possession of marijuana, two counts of the facilitation of the sale of .5 grams or more of cocaine within a drug-free school zone, and two counts of the sale of .5 grams or more of cocaine within a drug free school zone, arguing that the evidence was insufficient to support his convictions. Because our supreme court has determined that the provisions of the Drug-Free School Zone Act do not apply to convictions of facilitation, the sentences imposed for the defendant's convictions of facilitation must be reversed and the case remanded for resentencing on those counts. The judgments of the trial court are affirmed in all other respects.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed in Part; Reversed**
**and Remanded in Part**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Alexander Brown, Knoxville, Tennessee, for the appellant, Jeffrey Stanley Mitchell.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Sean McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant's convictions in case number 103177 relate to the sale of cocaine to confidential informant Laquinton Pettway on four occasions at the defendant's Woodbine Avenue address in Knoxville. The convictions in case number 103163 relate

to the execution of a search warrant at the Woodbine Avenue residence on September 12, 2013.

At trial, Mr. Pettway testified that he began working as a confidential informant with Knoxville Police Department ("KPD") Officer Adam Broome after Officer Broome arrested Mr. Pettway for selling cocaine. Mr. Pettway agreed to work as an informant in exchange for leniency in relation to his charges of violating his probation and selling cocaine.

On August 7, 2013, Officer Broome searched Mr. Pettway's person and his vehicle and then provided Mr. Pettway with $100 in marked money to purchase crack cocaine. Mr. Pettway was outfitted with audio and video recording equipment. Mr. Pettway then drove to a residence at 2544 Woodbine Avenue where he knew he could purchase drugs from a man he knew as "Jamaica" or one he knew as "Boss." He entered the residence through a side door and walked to a table where Boss and other men were seated. Mr. Pettway purchased cocaine "[a]t the table." Mr. Pettway identified the defendant from the video recording of the transaction as the man he knew as Boss. He said that the defendant appeared to sleep during the transaction. The recording of this transaction was played for the jury. After purchasing the cocaine, Mr. Pettway turned over the drugs and the recording equipment to Officer Broome.

Mr. Pettway returned to the Woodbine Avenue residence to purchase drugs on August 9, 2013. Again, Officer Broome searched Mr. Pettway's person and his vehicle and provided him with marked currency and recording equipment. Mr. Pettway again entered the residence through the side door, but on this occasion, he purchased cocaine directly from the defendant, who was seated in the corner of the room. The video recording of this transaction was played for the jury. Mr. Pettway said that he had never purchased cocaine directly from the defendant before and that he had always purchased from "Jamaica."

Mr. Pettway followed the same procedure when making a controlled purchase of $125 worth of crack cocaine at the Woodbine Avenue residence on August 28, 2013. When he entered the residence on that occasion, two men were at the kitchen counter bagging up crack cocaine. He explained that drug dealers would use a razor blade to shave smaller sale amounts of crack cocaine from a larger "cookie" of crack cocaine. He said that $125 would buy 2 to 3 grams of crack cocaine from Boss and that that amount, which was typically the size of a quarter, was referred to as an eight ball. Mr. Pettway would then break down that amount into "twenties," which he explained was a $20 rock of cocaine. He said that he was "supposed to get five" $20 rocks from two grams of cocaine. Mr. Pettway purchased the cocaine from one of the men bagging the cocaine at the counter. The recording of this transaction was played for the jury. He said

that it was not unusual for several individuals to be selling cocaine inside the Woodbine Avenue residence. Mr. Pettway turned the drugs and recording equipment over to Officer Broome.

Mr. Pettway initiated another controlled buy from the Woodbine Avenue residence on September 10, 2013. He employed the same procedure as he had in the previous buys. On that day, the defendant personally bagged and sold the crack cocaine to Mr. Pettway. Also on that day, Mr. Pettway inquired about purchasing a silver revolver with a black grip from the defendant, but the defendant said that the firearm was not for sale. The recording of this transaction was played for the jury.

The parties stipulated that the residence located at 2544 Woodbine Avenue is within 1,000 feet of Knoxville Baptist Christian School, a private elementary school, and God's Creative Enrichment Center, a child care agency. The parties also stipulated that Tennessee Bureau of Investigation ("TBI") testing established that the substance purchased by Mr. Pettway on each occasion was cocaine. The TBI laboratory report, which was admitted into evidence and published to the jury, established that the drugs purchased by Mr. Pettway on August 7, 2013, and August 9, 2013, weighed 2.20 grams. The drugs purchased on August 28, 2013, weighed 2.08 grams, and the drugs purchased on September 10, 2013, weighed 2.17 grams.

During cross-examination, Mr. Pettway acknowledged that the State had agreed that the sentence imposed for his most recent conviction of selling cocaine would be served concurrently to the sentence he was serving for his previous conviction of selling cocaine. Mr. Pettway said that although he had approached Officer Broome about becoming an informant, it was actually Officer Broome who suggested that he attempt to buy drugs from the defendant at the Woodbine Avenue address.

KPD Officer Adam Broome testified that "during the course of a debrief" with Mr. Pettway, Mr. Pettway mentioned the defendant by the street name of Boss, and the information provided by Mr. Pettway related to the defendant "correlated with some information" that the KPD had received from other sources. After verifying the information provided by Mr. Pettway, Officer Broome had Mr. Pettway participate in four controlled buys from the Woodbine Avenue residence. Officer Broome explained for the jury the process of arranging and completing a controlled buy. He stated that the informant and the informant's vehicle were searched for money and contraband, that KPD officers established the route that the informant would travel to the appointed location, that the informant was outfitted with recording equipment and provided with currency that had been previously photographed by the KPD, and that then the informant was escorted to the appointed location. Officer Broome said that KPD officers maintained constant surveillance of Mr. Pettway during each of the transactions at issue.

Following each purchase, Mr. Pettway turned over the drugs and the recording equipment, and Officer Broome again searched Mr. Pettway's person and vehicle for drugs or contraband. Mr. Pettway participated in four controlled buys from the Woodbine Avenue address following this procedure.

After each controlled buy, Officer Broome weighed and field tested the substance purchased by Mr. Pettway. On each occasion, the substance tested positive for the presence of cocaine. Officer Pettway then sealed the substance in an evidence envelope and sent it to the TBI for testing.

Based on the evidence received during the four controlled buys, Officer Broome obtained a warrant to search the Woodbine Avenue residence. Officers from the KPD executed the warrant on September 12, 2013.

Upon entering the residence, officers found several individuals inside the house and eventually located the defendant seated on a bed in one of the bedrooms. Officers discovered two loaded handguns under the pillow on the bed and an SKS assault rifle "between the mattress and box spring." In that same bedroom, officers found a "Hooka" that contained marijuana residue; a whisk that tested positive for the presence of cocaine, which indicated that it had been used in the process of cooking crack cocaine; a magazine with ammunition in it; and a safe. The safe contained cash, cellular telephones, and a vehicle title bearing the defendant's name and the Woodbine Avenue address. The defendant also had cash on his person, including bills from the controlled buys.

Officers found individually-packaged bags of crack cocaine in amounts similar to those purchased by Mr. Pettway throughout the kitchen. Officers also found three sets of digital scales, a marijuana cigarette, two pill bottles that bore the defendant's name and the Woodbine Avenue address, and a large paper bag in the kitchen. Inside the bag, officers found powder cocaine and "a cookie of [c]rack [c]ocaine," which, he explained, was powder cocaine that had been turned into crack cocaine but had not yet been broken and packaged for resale. Officers also discovered several pill bottles that contained crumbs of crack cocaine. Throughout the kitchen area, officers discovered cocaine in various stages of production and packaging. TBI testing established that the aggregate amount of cocaine in both crack and powder form found during the search was well in excess of 100 grams.

During cross-examination, Officer Broome insisted that Mr. Pettway mentioned the defendant during their first debriefing, referring to the defendant by his street name. Officer Broome said that he did not try to ascertain who owned the Woodbine Avenue residence. He admitted that he was unable to verify the identity of the two men who were seen packaging drugs for resale and who actually sold drugs to Mr.

-4-

Pettway on one occasion. Officer Broome said that although five or six people were present at the residence when he executed the search warrant, only the defendant and his daughter, Jalisa Ross, were charged with any crimes; Ms. Ross was charged with possession of cocaine based upon officers' discovery inside her purse of a pill bottle that contained crack cocaine. Officers found a "wad" of cash lying in the living room area of the house "as if somebody had thrown it," and some of the bills matched those provided to Mr. Pettway for the September 10, 2013 controlled buy.

The defendant testified that following his release from federal prison in 2011, he began buying cars at auction and reselling them as a means of making money. He also performed some mechanic work. The defendant said that he visited the Woodbine Avenue residence to smoke marijuana, play video games, and visit his children, who lived there with his estranged wife, Latronda Brenner. The defendant said that Ms. Brenner rented the Woodbine Avenue residence while he lived at 408 Oakland Street. He claimed that officers knew that he lived on Oakland Street.

The defendant admitted that drugs were sold at the Woodbine Avenue residence but denied participating in the drug sales. He said, "[T]hey did what they did, but I had no parts of it, so I figured if I didn't mess with nothing or touch nothing, that I had nothing to worry about." The defendant insisted that the drugs and guns found throughout the house belonged to Ms. Brenner's brother, Savante Hinton. He maintained that it was not his hand that could be seen handing drugs to Mr. Pettway during the second controlled buy, saying that he could not have reached that far across the table.

The defendant said that on the day the search warrant was executed, he had gone to the Woodbine Avenue residence to be with his children. He recalled that his feet were hurting because of his gout, so he took some medication and went to lie down in the bedroom where his wife's six-year-old niece usually slept. He said that he woke up shortly before the police came in and went to the restroom. He said that he heard the sound of a percussion device and then heard the officers shouting. He stepped into the hall, and his wife's niece jumped into his arms. An officer then came into the hall, instructed the defendant to put one of his hands up, and then instructed him to sit on the bed in the bedroom.

The defendant testified that he was carrying $1,240 in cash in his pocket on the day of the search because he intended to pay the rent for both his and Ms. Brenner's residences. He said that he used cash exclusively and that he did not have a bank account because "any money that [he] put in the bank" was garnished to pay a child support arrearage that accrued after "some of [his] baby mothers . . . got on support" while he was incarcerated on a federal drug conviction.

-5-

The defendant suggested that the KPD began investigating him only because a woman named Kendra Williams, who had a reason to hold a grudge against the defendant and Ms. Brenner, submitted a complaint to the KPD as retribution.

During cross-examination, the defendant acknowledged that he frequented the Woodbine Avenue residence despite knowing that drugs were being sold there. He admitted that the nearly 135 grams of cocaine, both in crack and powder form, discovered during the search of the Woodbine Avenue residence was "a lot." He also conceded that the kitchen table, which was the center of all the drug transactions in the house, was directly in front of his chair. Near the chair, officers found a pill bottle with crack cocaine in it, an empty cigarette pack with crack cocaine in it, a plate with crack cocaine crumbs on it, a razor blade with cocaine residue on it, a marijuana blunt, and a bag containing over 100 grams of crack cocaine.

The defendant denied selling drugs to Mr. Pettway during any of the controlled buys despite that the video recordings of the exchanges shows him doing just that on two occasions. He claimed that Mr. Pettway was lying "to get his time cut." He acknowledged that many of his friends and family members sold drugs at the Woodbine Avenue residence and that the nickname given to him by those people was "Boss."

Prior to trial, the State dismissed count 7 of case number 103163. Based upon the proof presented, the jury entered verdicts in case number 103163 as follows:

| Count | Charged Offense | Conviction Offense |
|---|---|---|
| 1 | possession with intent to sell more than 26 grams of cocaine within 1,000 feet of a private elementary school | facilitation of possession with intent to sell more than 26 grams of cocaine within 1,000 feet of a private elementary school |
| 2 | possession with intent to deliver more than 26 grams of cocaine within 1,000 feet of a private elementary school | facilitation of possession with intent to deliver more than 26 grams of cocaine within 1,000 feet of a private elementary school |
| 3 | possession with intent to sell more than 26 grams of cocaine within 1,000 feet of a child care agency | facilitation of possession with intent to sell more than 26 grams of cocaine within 1,000 feet of a child care agency |
| 4 | possession with intent to deliver more than 26 grams of cocaine within 1,000 feet of a child care agency | facilitation of possession with intent to deliver more than 26 grams of cocaine within 1,000 feet of a child care agency |
| 5 | possession of a firearm with the intent to go armed during the commission of a dangerous felony (possession with intent to sell a controlled substance) | not guilty |

| | after having been previously convicted of a dangerous felony (1996 conspiracy to distribute cocaine) | |
| 6 | possession of a firearm by a convicted felon | not guilty |
| 8 | simple possession of marijuana, third offense | Same |
| 9 | possession of drug paraphernalia | not guilty |

The jury entered verdicts in case number 103177 as follows:

| Count | Charged Offense | Conviction Offense |
|---|---|---|
| 1 | delivery of .5 grams or more of cocaine within 1,000 feet of a private elementary school | facilitation of the delivery of .5 grams or more of cocaine within 1,000 feet of a private elementary school |
| 2 | sale of .5 grams or more of cocaine within 1,000 feet of a private elementary school | facilitation of the sale of .5 grams or more of cocaine within 1,000 feet of a private elementary school |
| 3 | delivery of .5 grams or more of cocaine within 1,000 feet of a child care agency | facilitation of the delivery of .5 grams or more of cocaine within 1,000 feet of a child care agency |
| 4 | sale of .5 grams or more of cocaine within 1,000 feet of a child care agency | facilitation of the sale of .5 grams or more of cocaine within 1,000 feet of a child care agency |
| 5 | delivery of .5 grams or more of cocaine within 1,000 feet of a private elementary school | same |
| 6 | sale of .5 grams or more of cocaine within 1,000 feet of a private elementary school | same |
| 7 | sale of .5 grams or more of cocaine within 1,000 feet of a child care agency | same |
| 8 | delivery of .5 grams or more of cocaine within 1,000 feet of a child care agency | same |
| 9 | sale of .5 grams or more of cocaine within 1,000 feet of a private elementary school | facilitation of the sale of .5 grams or more of cocaine within 1,000 feet of a private elementary school |
| 10 | delivery of .5 grams or more of cocaine within 1,000 feet of a private | facilitation of the delivery of .5 grams or more of cocaine within 1,000 feet of a |

| | | |
|---|---|---|
| | elementary school | private elementary school |
| 11 | sale of .5 grams or more of cocaine within 1,000 feet of a child care agency | facilitation of the sale of .5 grams or more of cocaine within 1,000 feet of a child care agency |
| 12 | delivery of .5 grams or more of cocaine within 1,000 feet of a child care agency | facilitation of the delivery of .5 grams or more of cocaine within 1,000 feet of a child care agency |
| 13 | sale of .5 grams or more of cocaine within 1,000 feet of a private elementary school | same |
| 14 | delivery of .5 grams or more of cocaine within 1,000 feet of a private elementary school | same |
| 15 | sale of .5 grams or more of cocaine within 1,000 feet of a child care agency | same |
| 16 | delivery of .5 grams or more of cocaine within 1,000 feet of a child care agency | same |

In case number 103163, the trial court merged counts 2, 3, and 4 into count 1. In case number 103177, the court merged counts 2 through 4 into count 1; counts 5, 7, and 8 into count 6; counts 10-12 into count 9; and counts 14-16 into count 13. Following a sentencing hearing, the trial court imposed a sentence of 12 years to be served at 100 percent for the defendant's conviction of facilitation of the possession with intent to sell more than 26 grams of cocaine, a sentence of two years to be served at 30 percent for the defendant's conviction of third offense simple possession of marijuana, sentences of 12 years to be served at 100 percent for each of the defendant's convictions of facilitation of the sale of .5 grams or more of cocaine in a school zone, and sentences of 25 years to be served at 100 percent for each of the defendant's convictions of the sale of .5 grams or more of cocaine in a school zone. The trial court ordered partially consecutive sentencing for a total effective sentence of 27 years' incarceration.

In this timely appeal, the defendant asserts that the evidence presented at trial was insufficient to support his convictions. He argues that the testimony of the State's witnesses, particularly that offered by Mr. Pettway and Officer Broome, was inconsistent.

*Sufficiency*

We review the defendant's claim of insufficient evidence mindful that our

standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"It is an offense for a defendant to knowingly . . . [d]eliver a controlled substance; . . . [s]ell a controlled substance; or . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(2)-(4). A violation of this section with respect to .5 grams or more of cocaine, a Schedule II controlled substance, *see id.* § 39-17-408(b)(4), is a Class B felony, *see id.* § 39-17-417(c)(1), unless it "occurs . . . within one thousand feet (1,000') of the real property that comprises a public . . . elementary school," when it "shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation," *see id.* § 39-17-432(b). A violation involving an amount of cocaine in excess of 26 grams committed in a drug-free school zone is a Class A felony that carries a fine of $200,000. *See id.* § 39-17-417(i)(5); -432(b). A violation of this section with respect to less than .5 grams of cocaine within 1,000 feet of a public elementary school is a Class B felony. *See id.* § 39-17- 417(c)(2)(a); -432(b).

In this case, Mr. Pettway purchased cocaine on four occasions from the Woodbine Avenue residence, twice buying directly from the defendant and twice from other individuals as the defendant sat nearby. Prescription medication bottles and a vehicle title in the defendant's name bore the Woodbine Avenue address. During the August 7, 2013 transaction, Mr. Pettway purchased cocaine at the kitchen table while the defendant reclined nearby. During the August 9, 2013 transaction, Mr. Pettway purchased drugs directly from the defendant. During the August 28, 2013 transaction, Mr. Pettway purchased cocaine from another individual inside the residence. During the final transaction, Mr. Pettway purchased cocaine directly from the defendant, who was bagging cocaine for sale when Mr. Pettway arrived. The parties stipulated that the

substance that Mr. Pettway purchased at the Woodbine Avenue residence was cocaine and that the residence was located within 1,000 feet of both a private elementary school and a childcare agency. Recordings of each purchase were played for the jury. Authorities executed a search warrant on September 12, 2013, which led to the discovery of a large amount of cocaine in various stages of production and packaging, digital scales and other items used in the production and packaging of crack cocaine, two pill bottles that bore the defendant's name and the Woodbine Avenue address, and a marijuana cigarette. Marked bills from the four controlled buys were found in a stack of cash inside a safe at the residence, a wad of cash dropped in the front of the house, and cash found on the defendant's person. In our view, this evidence was more than sufficient to support each of his convictions. We decline, as we must, the defendant's invitation to revisit the credibility determinations made by the jury with regard to the testimony of the State's witnesses.

*Sentencing*

Although not raised by the parties, we find plain error in the defendant's sentences for his convictions of facilitation of the sale and delivery of cocaine based upon our supreme court's recent holding in *State v. Stanley Bernard Gibson*, ___ S.W.3d ___, No. M2014-00598-SC-R11-CD (Tenn. Nov. 16, 2016). This court will grant relief for plain error pursuant to Rule 36(b) only when:

> "(1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake."

*State v. Cooper*, 321 S.W.3d 501, 506 (Tenn. 2010) (quoting *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010)).

In *Stanley Bernard Gibson*, Gibson was charged with the possession of .5 grams or more of cocaine with intent to distribute in a drug-free school zone but convicted of the lesser-included offense of facilitation of possession of cocaine with intent to distribute within a drug-free school zone. *See State v. Stanley Bernard Gibson*, ___ S.W.3d ___, No. M2014-00598-SC-R11-CD, slip op. at 7 (Tenn. Nov. 16, 2016). Based upon the jury's finding that Gibson committed his offense within 1,000 feet of a school, the trial court classified the conviction offense one class higher and ordered that he serve 100 percent of the minimum sentence. *Id.*, slip op. at 5; *see also* T.C.A. § 39-17-432(b)(1) ("A violation of § 39-17-417, or a conspiracy to violate the section, that occurs on the grounds or facilities of any school or within one thousand feet (1,000′) of

the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation."). Our supreme court examined the plain language of the statute and held, however, that the Drug-Free School Zone Act "applies only to a violation of, or a conspiracy to violate, Tennessee Code Annotated section 39-17-417." *Stanley Bernard Gibson*, slip op. at 8 (citing *State v. Fields*, 40 S.W.3d 435, 439-40 (Tenn. 2001)). The high court ruled that "[b]ecause the Act does not apply to a conviction for facilitation, the trial court erred in classifying Mr. Gibson's conviction for facilitation as a Class B felony and requiring 100 percent service of the sentence." *Stanley Bernard Gibson*, slip op. at 9. The supreme court remanded the case for resentencing.

In this case, the defendant was charged in counts 1-4 of case number 103163 with possession with intent to sell or deliver more than 26 grams of cocaine in a school zone but was convicted of the lesser included offense of facilitation of possession with intent to sell or deliver more than 26 grams of cocaine in a school zone in each count. Similarly, the defendant was charged in counts 1 through 4 and counts 9 through 12 of case number 103177 with the sale or delivery of .5 grams or more of cocaine in a school zone but was convicted of the lesser included offense of the facilitation of the sale or delivery of .5 grams or more of cocaine in a school zone. Because our supreme court has determined that the provisions of the Drug-Free School Zone Act do not apply to convictions of facilitation, the trial court's increasing the offense classification for the facilitation convictions from a Class C felony to a Class B felony and ordering the defendant to serve 100 percent of the 12-year sentence imposed for each of these convictions breached a clear and unequivocal rule of law, and the record contains no indication that the defendant waived the issue for tactical reasons. In consequence, we reverse the sentences imposed for the defendant's convictions of facilitation and remand the case for resentencing on those counts.

Accordingly, the cause is remanded to the trial court for resentencing on count 1 of case number 103163 and counts 1 and 9 of case number 103177. The judgments of the trial court are affirmed in all other respects.

_____
JAMES CURWOOD WITT, JR., JUDGE